496

(No. 35413.—

Marshall & Huschart Machinery Co., Appellant, *vs.*
The Department of Revenue, Appellee.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

DIXON, MORSE, KNOUFF, POTTER & HOLMES, of Chicago, (FRED W. POTTER, of counsel,) for appellant.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Plaintiff, Marshall & Huschart Machinery Co., appeals from a judgment of the circuit court of Cook County affirming an assessment of a retailers occupation tax deficiency. Plaintiff had protested pursuant to receipt of a notice of proposed assessment of such deficiency, and had a hearing before the Department of Revenue. Final assessment was entered upon the conclusion of such hearing, and appeal was taken to the circuit court which affirmed the assessment. The revenue being involved, the cause comes directly to this court on appeal.

Plaintiffs, prior to 1946, bought machine tools from manufacturers and resold them to users in this State. In order to compete with out-of-State sellers, who were not subject to the Illinois retailers occupation tax, the plaintiff revised its operation. It proposed to enter into amendments of its exclusive representation agreements held with its manufacturers, to become a limited agent only for these out-of-State manufacturers, with authority only to solicit orders from Illinois customers and to forward same to the out-of-State manufacturers for acceptance at their places of business. The machines were then to be manufactured and shipped into Illinois directly to the customer f.o.b. the out-of-State factory. The out-of-State manufacturer, as principal, was then to send its invoices to plaintiff at the retail price, less the commission payable to plaintiff, and plaintiff was to invoice the customer at full list price.

This plan was presented to the Department of Revenue with a request for a ruling as to the liability of plaintiff, under such plan, for retailers occupation tax, and the liability of the out-of-State principal for the same. The Department ruled that it appeared that plaintiff would be solely an agent and that a *bona fide* agent who acts for a disclosed principal is not, itself, engaged in *selling* at retail, and the out-of-State principal, as the seller, is not subject to the tax, provided the situation is as proposed and represented.

Thereupon plaintiff amended its exclusive representation agreements, engaged in solicitation, *etc.*, as proposed, and purchased the accounts receivable of the out-of-State manufacturers thus generated, without recourse.

On March 20, 1951, the Department advised the plaintiff that it would no longer be bound by the previous ruling, but would examine each company's method of doing business in all pertinent respects when the question of agency arises from a sale, or whether the company is an independent distributor buying for resale.

The plaintiff continued to pursue its same outlined procedures. The Department subsequently instructed an auditor to audit the books and records of plaintiff from April 1, 1951, to June 30, 1954. Upon completion of the audit, a notice of proposed assessment was issued by the Department and delivered to plaintiff. Plaintiff filed its protest and the various hearings and appeals followed.

Plaintiff urges (1) that it is only an agent soliciting orders for out-of State manufacturers and is not engaged in selling tangible personal property at retail, (2) that the transactions were interstate sales expressly exempt from the Retailers' Occupation Tax Act by section 2 thereof, and (3) that its motion to dismiss at the close of the Department's case should have been sustained.

Plaintiff insists that the Department of Revenue did

not make a *prima facie* case to support its notice of proposed assessment, and that error resulted from the failure of the hearing officer to sustain plaintiff's motion to dismiss at the close of the Department's case. Section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1957, chap. 120, par. 443) provides that the Department shall examine a taxpayer's return, correct it according to its best judgment and information, and such corrected return shall be *prima facie* evidence of the correctness of the amount of tax due.

The Department in this case, contrary to the procedures followed in the cases cited to us by plaintiff (*Goldfarb* v. *Department of Revenue,* 411 Ill. 573; *Miller* v. *Department of Revenue,* 408 Ill. 574; *Novicki* v. *Department of Finance,* 373 Ill. 342,) accepted the books and records of the plaintiff as true and correct, but disagreed as to the taxability of various transactions. No unreal, arbitrary, or artificial markup or determination of taxable receipts was adopted by the Department auditor.

In this case the auditor only examined the recorded transactions and drew a determination of taxability or non-taxability from plaintiff's records of each sale. The Department corrected plaintiff's return as directed by statute. That return as corrected, the audit of plaintiff's books and records, and the auditor's testimony constituted a *prima facie* case. (*Goldfarb* v. *Dept. of Revenue,* 411 Ill. 573.) The auditor's opinion or considerations in regard to the ruling, withdrawal, and so-called limited agency agreements, could not and did not vary the establishment of a *prima facie* case by the Department. The Department met its burden and its assessment was not subject to dismissal at the close of the Department's case. The hearing officer did not err in overruling the motion of plaintiff, and in requiring plaintiff to proceed in its effort to overcome that case.

Plaintiff insists that it is a limited agent for out-of-

State manufacturers, and only solicits orders which are accepted outside the State of Illinois. Hence it argues that it is not engaged in the business of selling tangible personal property, and that all sales were interstate, rendering both plaintiff and the sale not subject to the application of the Retailers' Occupation Tax Act. Section 2 of that act (Ill. Rev. Stat. 1957, chap. 120, par. 441,) imposes a tax upon the business of selling tangible personal property at retail at the rate of two per cent of the gross receipts of such sales after June 30, 1941. The tax is not imposed, however, upon the privilege of engaging in interstate commerce.

It is clear that prior to the year 1946, the plaintiff purchased machines from out-of-State manufacturers and resold them within this State to Illinois users, and that plaintiff was thus engaged in selling tangible personal property at retail within Illinois. Pursuant to the plan devised and submitted to the Department, plaintiff amended and re-executed its exclusive representation agreements with its out-of-State manufacturers, by insertion of language purporting to make it a limited agent with authority only to solicit orders from Illinois customers. The orders, thereafter, were accepted out-of-State and shipped directly to the customer. The mere solicitation of orders only in this State has been found not to subject the seller to the retailers occupation tax, where the seller is an out-of-State resident and the goods are shipped from out-of-State. There the interstate commerce clause applies to bar the application of the tax. *Norton Co.* v. *Dept. of Revenue,* 340 U.S. 534, 95 L. ed. 517; *McLeod* v. *Dilworth Co.* 322 U.S. 327, 88 L. ed. 1304; *Automatic Voting Maching Corp.* v. *Daley,* 409 Ill. 438; *Allis-Chalmers Manufacturing Co.* v. *Wright,* 383 Ill. 363.

However, plaintiff's plan provided that the out-of-State manufacturer should invoice plaintiff at the retail price of the machine, less commission payable to plaintiff, and plaintiff should invoice the customer for full list price. Plain-

tiff's operation went a step further—in all of these transactions, plaintiff purchased the account receivable from the out-of-State manufacturer or supplier, without recourse. The transactions, except in the matter of form, are little different from those occurring before 1946. Plaintiff by contract language has called itself a limited agent and purports to have only the power to solicit orders. The orders are technically marked accepted out-of-the-State, but the orders solicited by plaintiff are not refused. The customers are not merely billed through plaintiff but plaintiff actually purchases the account receivable and in turn bills the Illinois user. The only real difference which now occurs is that all orders are sent directly from the manufacturer to the Illinois customer. It clearly appears that the transaction is the same as those prior to 1946. Plaintiff has merely created a fiction or subterfuge in an effort to transmute a strictly intrastate transaction into an interstate sale in order to evade the application of the Illinois tax. Plaintiff continues to enjoy all of the profits of an intrastate sale, and all of the advantages of selling tangible personal property at retail, but claims it has avoided the application of the Illinois tax placed upon its occupation. The only purpose of this complicated procedure was to escape taxation, without loss of the privileges and profits theretofore enjoyed. The mere amendment of the agreements of plaintiff and the out-of-State manufacturers, without an actual change of business operation, could not convert a purely local business into an interstate commerce business, protected by the commerce clause. (*Superior Oil Co.* v. *State of Mississippi ex rel. Knox,* 280 U.S. 390, 74 L. ed. 504.) Plaintiff did not, after 1946, merely solicit for the out-of-State concerns, but it continued to conduct the same business it had previously enjoyed. Plaintiff continued to sell to Illinois users, and the out-of-State manufacturers merely supplied the needs of plaintiff. The sales were all made upon plaintiff's credit, to and for plaintiff's business.

Plaintiff was engaged in selling at retail within this State, and the sales by plaintiff to Illinois users were not interstate transactions. The circuit court of Cook County correctly upheld the Department's finding of taxability, and its judgment is affirmed.

*Judgment affirmed.*